IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-00447-PAB-KMT

ASPEN ROOFING, INC., a Colorado corporation,

    Plaintiff,

v.

ASPEN CONTRACTING, INC., a Kansas corporation, and
PATRICK NUSSBECK, an individual,

    Defendants.

---

# ORDER

---

    This matter comes before the Court on Aspen Contracting, Inc.'s Motion to Dismiss First Amended Complaint [Docket No. 35], Patrick Nussbeck's Motion to Dismiss First Amended Complaint [Docket No. 36], Aspen Contracting, Inc.'s Motion for Summary Judgment [Docket No. 89], Patrick Nussbeck's Motion for Summary Judgment [Docket No. 92], plaintiff Aspen Roofing, Inc.'s Motion for Preliminary Injunctive Relief with Incorporated Memorandum of Law [Docket No. 94], Plaintiff's Motion to Strike ECF Nos. 98-3, 98-4, 98-5, and 98-6 [Docket No. 117], and Aspen Contracting, Inc.'s and Patrick Nussbeck's Motion for Leave to File Sur-reply Brief In Opposition to Aspen Roofing's Motion to Strike [Docket No. 127]. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

## I. BACKGROUND [1]

Plaintiff is a corporation that provides roofing services in El Paso County, Colorado. Docket No. 89 at 1, ¶ 2. Plaintiff was incorporated in Colorado in 1997. Docket No. 103 at 5, ¶ 30. Defendant Aspen Contracting, Inc. ("Aspen Contracting") is a corporation that provides roofing, siding, gutters, and related services in El Paso County. Docket No. 89 at 1, ¶ 1. Defendant Patrick Nussbeck is Aspen Contracting's president. Docket No. 102 at 3, ¶ 9. In Colorado Springs, where plaintiff is based, there are at least four roofing companies that use the terms "Aspen" and "roofing" in their business names. Docket No. 89 at 3, ¶ 10.[2]

On February 17, 2017, plaintiff filed this lawsuit. Docket No. 1. Plaintiff alleges that it has used the trademark "Aspen Roofing" in Colorado "[b]eginning as early as 1993." Docket No. 31 at 3, ¶ 12. Plaintiff claims that defendants are "storm chasers" who "follow[] storms around the country, provide[] shoddy repairs, and then disappear[] from the local area." *Id.* at 4, ¶ 15. Plaintiff further claims that defendants and their employees and agents have "falsely . . . portrayed themselves to the consuming public as employees or agents of [p]laintiff." *Id*. at 5, ¶ 20. As a result, plaintiff alleges that its "name and goodwill" have been tarnished. *Id*. at 8, ¶ 36. In the operative complaint,

---

[1] The following facts are undisputed unless otherwise noted.

[2] As applied to defendants' motions for summary judgment, plaintiff argues that the foundational documents for this fact are "inadmissible and irrelevant hearsay." Docket No. 103 at 3, ¶ 10. However, plaintiff does not dispute the apparent legitimacy of the websites for the local firms. Therefore, the fact is considered undisputed for purposes of the motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3. The Court does not rely on this fact in resolving the motions to dismiss.

plaintiff brings six claims for relief: (1) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (2) deceptive trade practices under Colo. Rev. Stat. §§ 6-1-101 *et seq.*; (3) trademark infringement under Colorado common law; (4) unfair competition under Colorado common law; (5) intentional interference with actual and prospective business relations; and (6) unjust enrichment. *Id*. at 9-13, ¶¶ 41-76. On October 19, 2017, defendants filed motions to dismiss. Docket Nos. 35, 36. On October 12, 2018, defendants filed motions for summary judgment, Docket Nos. 89, 92, and plaintiff filed a motion for a preliminary injunction. Docket No. 94.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

A motion under Fed. R. Civ. P. 12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that the Court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City and Cty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556 at *1 (D. Colo. Sept. 24, 2012).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074

(10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). The court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1296 (10th Cir. 2003).

### B.　Fed. R. Civ. P. 56

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the

4

nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Lanham Act Claim

The Court begins its analysis with plaintiff's First Claim, which alleges that defendants are infringing its "common law trademark," Aspen Roofing, under the Lanham Act. Docket No. 94 at 5.[3]

A service mark, similar to a trademark, is defined by the Lanham Act as "any word, name, symbol, or device, or any combination thereof" that is used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. Under § 43(a) of the Lanham Act, the owner of any valid mark, registered or not, may sue

---

[3] Although the parties refer to Aspen Roofing as a "trademark," *see* Docket No. 94 at 5, Aspen Roofing is properly referred to as a service mark because it describes a service – roofing – rather than goods. *See* 15 U.S.C. § 1127.

5

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. § 1125(a). The elements of an infringement claim under § 43(a) are that (1) plaintiff has a protectable interest in the mark; (2) defendant has used an identical or similar mark in commerce; and (3) defendant's use is likely to confuse consumers. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (internal citations and quotations omitted).

### 1. Motions to Dismiss

In their motions to dismiss, defendants argue that plaintiff, under either Article III of the United States Constitution or the Lanham Act, does not have standing. Docket No. 35 at 2-7; Docket No. 36 at 2-10. Because defendants' standing argument implicates the Court's subject matter jurisdiction, the Court considers these arguments first. *See Cunningham v. BHP Petroleum Great Britain PLC,* 427 F.3d 1238, 1245 (10th Cir. 2005) (noting that a court that lacks subject matter jurisdiction has no power to rule on any substantive motions in a case).

#### a. Article III Standing

Article III of the Constitution vests the judicial branch with jurisdiction to hear "[c]ases" and "[c]ontroversies." U.S. Const. art. III § 2. An essential part of the case-and-controversy requirement is the standing doctrine, which "serves to identify those

6

disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). To have standing,

> [f]irst, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations, quotations, and alterations omitted).

Plaintiff alleges that defendants invaded a legally protected interest – the Aspen Roofing trademark. *See* Docket No. 31 at 3, ¶ 12. It asserts that this invasion has caused it injury. *See id.* at 8, ¶ 36 (alleging that defendants' acts have confused consumers about the origin of defendants' services, leading to the "name and goodwill" of plaintiff being tarnished). Plaintiff further alleges that the injury is caused by defendants' conduct. *See id*. Finally, it is likely that the requested relief – an injunction preventing defendants from violating plaintiff's rights under the Lanham Act – will redress the alleged injury. *See id*. at 10, ¶ 44. As plaintiff has pled an injury-in-fact, causally connected to the conduct complained of, and likely to be redressed by a favorable decision, the Court finds that plaintiff has Article III standing to bring its claim.

### b. Lanham Act Standing

To have standing for a cause of action under 15 U.S.C. § 1125(a), a plaintiff must establish that its interest "fall[s] within the zone of interests protected by the law" and that its injuries are "proximately caused by violations of the statute." *Lexmark Int'l,*

7

*Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-32 (2014).

A plaintiff must allege "an injury to a commercial interest in reputation or sales" in order to come within the "zone of interests" protected by 15 U.S.C. § 1125(a). *Lexmark*, 572 U.S. at 131-32 (applying the enumerated purposes of the Lanham Act, 15 U.S.C. § 1127). There is "no doubt" that "a person engaged in commerce within the control of Congress whose position in the marketplace has been damaged by [a defendant's] false advertising" is "within the zone of interests." *Id*. at 137 (internal quotations and alterations omitted). Plaintiff alleges that it provides roofing services in El Paso County, Colorado. Docket No. 31 at 3, ¶ 11. Plaintiff also alleges that defendants engage in similar services in El Paso County. *Id*. at 4, ¶ 16. As plaintiff is a direct competitor with defendants who "alleges an injury to a commercial interest in reputation or sales," it is within the "zone of interests" protected by the Lanham Act. *See Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1061 (D. Colo. 2017).

To establish proximate cause, a plaintiff must allege "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Lexmark*, 572 U.S. at 133. Such injury "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. Plaintiff states that employees or agents of defendants have "portrayed themselves to the consuming public as employees or agents of [p]laintiff" by, for example, "stating falsely to consumers that they work for the owner of [plaintiff]." Docket No. 31 at 5, 9, ¶¶ 20, 37. Plaintiff cites letters from customers who have complained to plaintiff about roofing jobs done by defendants. *Id*. at 6-8, ¶¶ 25, 28-33. As a result, plaintiff alleges that "the name and goodwill of

8

[plaintiff] has been tarnished." *Id*. at 8, ¶ 36. This reputational injury "flow[s] directly from the deception" caused by defendants' use of plaintiff's name and from the misrepresentations to customers. *Lexmark*, 572 U.S. at 133. Accordingly, plaintiff has pled facts to support its argument that defendants' use of plaintiff's name has misled consumers about its products. *See Crocs*, 248 F. Supp. 3d at 1061. Therefore, plaintiff has statutory standing to pursue its Lanham Act claim.

### 2. *Motions for Summary Judgment*

The Court next turns to defendants' motions for summary judgment on plaintiff's Lanham Act claim.

Defendants argue that plaintiff does not have a protectable interest in the service mark Aspen Roofing. Docket No. 89 at 7-13. "To be protectable, 'a mark must be capable of distinguishing the products or services it marks from those of others.'" *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (quoting *Lane Capital Mgmt. Inc, v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)). "The general rule regarding distinctiveness is clear: an identifying mark is distinctive and capable of being protective if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). Marks that are "suggestive," "arbitrary," or "fanciful" are inherently distinctive, while marks that are "descriptive" must acquire distinctiveness through secondary meaning. 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:2 (5th Ed. March 2019 Update). The categorization of a mark is a question of fact; however, a plaintiff must present enough evidence at the summary

9

judgment stage to allow a reasonable jury to conclude that the mark is protectable. *Donchez*, 392 F.3d at 1218.

Defendants argue that Aspen Roofing is "descriptive," while plaintiff argues that it is either "arbitrary" or "suggestive." *See* Docket No. 89 at 7-13; Docket No. 103 at 8-12.

"The determination of whether a mark is descriptive or suggestive is difficult." *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1007 (10th Cir. 2014).[4] In the Tenth Circuit, the test for distinguishing the categories is whether the mark "require[s] the buyer to use thought, imagination, or perception to connect the mark with the goods," in which case the mark is suggestive, while a term that "*directly convey[s]* to the buyer the ingredients, qualities, or characteristics of the product" is descriptive." *Id.*; *see also Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1152-53 (10th Cir. 2013). In reviewing the mark, the Court may "separately view the component parts as a preliminary step," but "test[s] for its validity and distinctiveness by looking at it as a whole." 2 McCarthy on Trademarks § 11:27.

Plaintiff uses the Aspen Roofing mark to denote its "roofing installation and roofing repair services." *See* Docket No. 103 at 5, ¶ 32. The "roofing" portion of the mark therefore directly conveys the type of services provided by plaintiff.

The "Aspen" portion of the mark is less clearly categorized. Defendant argues

---

[4] The Court finds that purchasing parties would not find Aspen Roofing to be "arbitrary." *Donchez*, 392 F.3d at 1216 (observing that the fact-finder's function is "to determine, based on the evidence before it, what the perception of the purchasing public is"). "An arbitrary mark applies a common word in an unfamiliar way." *Id*. Arbitrary marks "neither suggest nor describe any ingredient, quality, or characteristic" of the service. 2 McCarthy on Trademarks § 11:11. Here, the mark unambiguously describes a characteristic of plaintiff's services – that it provides roofing services.

10

that Aspen is "geographically descriptive" of either the state of Colorado or the town of Aspen, Colorado. Docket No. 89 at 7-10. The Court disagrees. Plaintiff provides no services related to or associated with the town of Aspen. *See* Docket No. 89 at 1, ¶ 2. Moreover, defendants provide no persuasive evidence that Aspen is associated with Colorado apart from the town of Aspen. Although defendants offer evidence that many Colorado companies have Aspen in their names, that fact does not suggest that Aspen is associated with Colorado. Instead, the question is whether, compared to other states, Colorado has a disproportionate number of companies that use Aspen in their names. Defendants make no such showing.

Defendants also argue that "Aspen" is "descriptive" because other construction-related companies in El Paso County use the term to describe their services. *See* Docket No. 109 at 6-7 (citing 2 McCarthy § 11:69). In support, defendant offers evidence that, in Colorado Springs where plaintiff is based, there are at least four roofing companies that use the terms "Aspen" and "roofing" in their business names. Docket No. 89 at 3, ¶ 10. However, defendants fail to explain how the word "Aspen" modifies the word "roofing" in a way that describes the services provided. The Court finds that "Aspen" is not descriptive in the mark Aspen Roofing.

Plaintiff asserts that Aspen Roofing is suggestive rather than descriptive. *See* Docket No. 103 at 10; *Water-Pik*, 726 F.3d at 1153; *Donchez*, 392 F.3d 1211, 1217. The Court disagrees. When evaluating the mark as a whole, adding the word "Aspen" to "roofing" does not require a consumer to use any "thought, imagination, or perception" to connect the mark with plaintiff's services. *See Hornady*, 746 F.3d at 1007. Moreover, "Aspen" does not modify "roofing" in any way that weakens the

11

descriptive nature of "roofing." As a result, a consumer would consider the mark "Aspen Roofing" to describe roofing services. The mark is therefore descriptive. As plaintiff puts forward no evidence that suggests otherwise, the Court concludes that plaintiff has not presented sufficient evidence to create a genuine dispute of material fact on the issue of whether the mark is descriptive or suggestive.

Because Aspen Roofing is a descriptive mark, plaintiff must establish that the mark has acquired "secondary meaning" to show that the mark is protectable. "Secondary meaning exists only if most consumers have come to think of the [mark] as not descriptive at all but as the name of the product or service." *Donchez*, 392 F.3d at 1218. "A high degree of proof is needed to establish the secondary meaning of a descriptive term." *Water Pik, Inc. v. Med-Systems, Inc*, 848 F. Supp. 2d 1262, 1278 (D. Colo. 2012), *aff'd*, 726 F.3d 1136 (10th Cir. 2013). A plaintiff may establish secondary meaning either through direct evidence or circumstantial evidence. *Donchez*, 392 F.3d at 1218. Direct evidence of secondary meaning can consist of consumer surveys or testimony from consumers. *Id*. Circumstantial evidence can show secondary meaning if it indicates "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." *Id*.

Plaintiff argues that it has provided both direct and circumstantial evidence of secondary meaning. For direct evidence, plaintiff offers a document that purportedly "identif[ies] [plaintiff's] consumers and the corresponding source of the referral for each

consumer including advertising employing [the Aspen Roofing mark]." *See* Docket No. 103 at 10 (citing Docket No. 103-4). The document appears to be a listing of jobs performed by plaintiff, listing the job number, job address, job start date, and the source of the referral. *See* Docket No. 103-4. While this document does list some referrals as coming through advertisements, the document does not show that "most consumers" in the relevant marketplace "have come to think of [Aspen Roofing] as not descriptive at all but as the name of the . . . service." *See Donchez*, 392 F.3d at 1218. Rather, it only shows that plaintiff's customers, who have affirmatively engaged Aspen Roofing after viewing an advertisement for its services, think of Aspen Roofing as descriptive of plaintiff's service. The document indicates nothing about what those consumers in the marketplace who have not engaged Aspen Roofing think about the Aspen Roofing mark.

For circumstantial evidence, plaintiff offers: (1) a Colorado statement of trademark registration, filed in 2016, stating that plaintiff has used the mark in commerce since 1993, *see* Docket No. 103-11; (2) a statement from 2007 showing that plaintiff spent over $19,000 on advertising in 2007, *see* Docket No. 105-1; and (3) a bill from 2017 showing that plaintiff pays "Dex Media" monthly for advertising expenses, *see* Docket No. 105-2. *See* Docket No. 103 at 10-11. In *Water-Pik*, plaintiff's circumstantial evidence demonstrated that it had used its mark continuously for over fifteen years, spent about thirty percent of its total sales on marketing and advertising, and had appeared in a national segment on Oprah Winfrey's television show. *See Water Pik*, 848 F. Supp. 2d at 1278. The court nonetheless concluded that such

evidence did not "constitute the high degree of proof necessary to establish secondary meaning," in part because plaintiff failed to provide "consumer survey results or testimonial evidence." *See id.; see also Donchez*, 392 F.3d at 1218-19 (declarations from two individuals insufficient to create a genuine dispute of fact on issue of secondary meaning). Plaintiff here also relies on evidence that it has used the mark in commerce for about 25 years and that it spent some percentage of its income on advertising in 2007 and 2017, without providing any survey results or testimonial evidence. *See* Docket No. 103 at 10-11. This evidence does not show that plaintiff's sales were caused by a connection with plaintiff's advertising of the mark. *See Water Pik*, 726 F.3d at 1154-55. Further, plaintiff's evidence does not provide crucial "context in which to place raw statistics." *See Bose Corp. v. QSC Audio Products, Inc.*, 293 F.3d 1367, 1375 (Fed. Cir. 2002). As a result, plaintiff's evidence fails to show that "most consumers have come to think of the [mark] as not descriptive at all but as the name of the product or service." *See Donchez*, 392 F.3d at 1218. No reasonable jury could conclude from this scant circumstantial evidence that Aspen Roofing has established secondary meaning in the minds of the public.

Because plaintiff did not register its mark, it has the burden to prove secondary meaning. *See Donchez*, 392 F.3d at 1216. As plaintiff has provided insufficient evidence to allow a jury to find that it has a protectable interest in the mark Aspen Roofing, the Court will grant summary judgment for defendants on the first claim.[5] *See*

---

[5] Plaintiff moved for a preliminary injunction at the close of discovery. Docket No. 94. In light of the Court's grant of summary judgment for defendants, plaintiff cannot demonstrate a likelihood of success on the merits on its Lanham Act claim. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Accordingly,

14

*id.* at 1219.

### B. State Law Claims

Having granted summary judgment for defendants on the first claim, the only claims remaining before the Court are state law claims. *See* Docket No. 31 at 10-13, ¶¶ 46-76. Plaintiff asserts that the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. *See id*. at 2, ¶ 7.[6] Although the Court may exercise supplemental jurisdiction over state law claims if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted). There being no compelling reason to do so, the Court will not exercise supplemental jurisdiction and will dismiss

---

plaintiff's preliminary injunction motion will be denied. Plaintiff also moved to strike certain exhibits submitted in support of defendants' response to the preliminary injunction motion. Docket No. 117 (seeking to strike Docket Nos. 98-3, 98-4, 98-5, and 98-6). That motion will be denied as moot, as will defendants' motion for leave to file a sur-reply brief in opposition. Docket No. 127.

[6] The Court does not have original jurisdiction over this action pursuant to 28 U.S.C. § 1332, as plaintiff has not demonstrated that the parties are "citizens of different States." *See* 28 U.S.C. § 1332(a)(1); Docket No. 31 at 2, ¶ 5 (plaintiff's complaint does not allege any information about Nussbeck's citizenship).

15

plaintiff's remaining claims without prejudice.[7]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Aspen Contracting, Inc.'s Motion for Summary Judgment [Docket No. 89] is **GRANTED**. It is further

**ORDERED** that Patrick Nussbeck's Motion for Summary Judgment [Docket No. 92] is **GRANTED**. It is further

**ORDERED** that plaintiff's Motion for Preliminary Injunctive Relief with Incorporated Memorandum of Law [Docket No. 94] is **DENIED**. It is further

**ORDERED** that Aspen Contracting, Inc.'s Motion to Dismiss First Amended Complaint [Docket No. 35] is **DENIED** as to plaintiff's First Claim and **DENIED AS MOOT** as to plaintiff's other claims. It is further

**ORDERED** that Patrick Nussbeck's Motion to Dismiss First Amended Complaint [Docket No. 36] is **DENIED** as to plaintiff's First Claim and **DENIED AS MOOT** as to plaintiff's other claims. It is further

**ORDERED** that Plaintiff's Motion to Strike ECF Nos. 98-3, 98-4, 98-5, and 98-6 [Docket No. 117] is **DENIED AS MOOT**. It is further

---

[7] Plaintiff is reminded that the applicable statute(s) of limitations may affect any refiling of its claims in state court. *See* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

**ORDERED** that Aspen Contracting, Inc.'s and Patrick Nussbeck's Motion for Leave to File Sur-reply Brief In Opposition to Aspen Roofing's Motion to Strike [Docket No. 127] is **DENIED AS MOOT**. It is further

**ORDERED** that judgment shall be entered in favor of defendants Aspen Contracting, Inc. and Patrick Nussbeck on plaintiff's First Claim. It is further

**ORDERED** that all remaining claims against defendants are **DISMISSED WITHOUT PREJUDICE**. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED March 21, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge